UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARLES A. FEHRENBACH,

                Plaintiff,

  -against-                              **REPORT AND RECOMMENDATION**

MR. LEE ZELDIN, et al.,              17-CV-5282 (JFB)(ARL)

                Defendants.
------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      On September 8, 2017, the prose plaintiff, Charles Fehrenbach ("Fehrenbach"), commenced this action pursuant 42 U.S.C. §1983, against the defendants Congressman Lee Zeldin ("Zeldin"), Kevin and Maureen Dowling, Mark Zuckerberg ("Zuckerberg"), Facebook, Inc. ("Facebook") and Zeldin's unnamed IT Support Staff, alleging that his constitutional rights were violated when Zeldin and/or his staff deleted certain posts and conversation threads that Fehrenbach had posted to Zeldin's Facebook page. ECF No. 1. Among other things, Fehrenbach takes issue with the fact that the Facebook platform allows users to hide comments posted on an individual's Facebook page without "indication or notification." Pl.'s' Mem at 2. Before the Court, on referral from District Judge Bianco, is the motion of Zuckerberg and Facebook (collectively, the "Facebook defendants") to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court respectfully recommends that the motion be granted.

**BACKGROUND**

    A.  Factual Averments

      The following facts are drawn from the complaint and taken as true for the purposes of

his motion. Fehrenbach is a resident of Centereach, New York. Compl. 2.[1] Zeldin, is a U.S. Representative for the first congressional district of New York. *Id*. Kevin Dowling is Zeldin's Legislative Director. *Id*. Maureen Dowling is a member of Zeldin's staff. *Id* Facebook operates the world's leading social media service. Defs.' Mem. at 2. Zuckerberg is Facebook's founder and CEO. *Id*

It can be inferred from the complaint, that Zeldin, like many elected representatives, maintains a Facebook page, which allows Facebook users to post comments for view by others, depending on the privacy settings set by the page's creator. Compl. 4, Defs.' Mem at 2. On January 6, 2016, and August 28, 2017, Fehrenbach posted admittedly negative comments to Zeldin's Facebook page, which Zeldin or his staff later blocked from public view. Compl. 5 -8, App. A, I. Specifically, on January 6, Fehrenbach posted a comment in response to the "text from the Omnibus bill" to address an allegedly inaccurate comment made by Zeldin on his Facebook page. *Id*. 5. The post stated:

> Mr. Zeldin, Please provide the text from the Omnibus bill which caused the VISA confusion (as I requested in an email). I also suggest that you contact the "radio hosts" and request to be on there (sic) shows to help correct the record.

*Id*. Fehrenbach asserts that although he was able to see his post when he was logged onto his Facebook page, other users could not see the post if he was not logged on. *Id*

---

[1] Fehrenbach completed a Non-Prisoner Complaint for Violation of Civil Rights form. The factual allegations are set forth in narrative paragraphs. Accordingly, the undersigned will cite only to the page number of the complaint.

2

He further asserts that at some point that post was deleted. Id.

On August 28, 2017, Fehrenbach posted a second comment - "hurricanes are not the only thing that survives on hot air, Politicians do as well." *Id*. App. I. Fehrenbach alleges that the August 28 post was also being filtered. *Id*. 5. Finally, at some point following the initial January 6 post, Fehrenbach created a new Facebook page called "LieZelden" and then informed Zeldin or his staff that he had created the page. Id. In response, Fehrenbach received a message from Maureen Dowling suggesting that the "post" might go against Facebook's Community Standards about spam. *Id.* App. G.

Fehrenbach asserts that the actions of Zeldin, the Dowlings and Zeldin's IT support staff in filtering his legitimate concerns violated his First Amendment rights to free speech and were "stressful, demoralizing, disappointing and aggravating." *Id*. 6.   Although Fehrenbach does not claim that Facebook or Zuckerberg had any role in Zeldin's or his staffs decision to block his comments, Fehrenbach, nonetheless, alleges that Facebook and Zuckerberg violated his rights by providing Facebook users with the capability to hide and remove posts and by failing to ensure that government officials do not abuse this capability. Id. at 5, 6. Fehrenbach further claims that the Facebook defendants' failure to monitor "enables abuse and promotes deception and inaccurate AKA 'fake news.'" *Id*. 6.   Fehrenbach is seeking (i) $500,000 for emotional distress and $500,000 in punitive damages from Zeldin, (ii) $50,000 in unspecified damages from Mr. Dowling, (iii) restoration of the comments at issue and (iv) a public apology. *Id*. 6.

## DISCUSSION

### I. Standard of Review

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted).

Where, as here, the complaint was filed *pro se*, the Court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). However, a *pro se* complaint must state a plausible claim for relief, *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and mere conclusions of law unsupported by factual averments need not be accepted, *Klos v. Bligh*, No. 13-CV-5449, 2014 WL 3778993, at *5 (E.D.N.Y. July 31, 2014).

**II.     Analysis**

    **A. Section 1983's State Action Requirement**

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution or the laws of the United States, and (2) that the deprivation was "committed by a person acting under the color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). "'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.'" *Fabrikant v. French*, 691 F.3d 19 3,206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass' n*, 396 F.3d 178, 186 (2d Cir. 2005)). Here, Fehrenbach's 1983 claims against the Facebook defendants must fail because he has not, and cannot, establish that their conduct constituted state action.

Generally, the conduct of private persons or entities, no matter how wrongful does not constitute state action. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). That being said, in some instance, courts have found state action where "'there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated

5

as that of the State itself."' *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass 'n,* 531 U.S. 288, 295 (2001)(internal quotations omitted)). In those instances, however, a plaintiff must demonstrate that:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008)(citing *Brentwood Acad.*, 531 U.S. at 296). Indeed, it is not enough for a plaintiff to simply plead that "some activity of the institution" inflicted injury upon him. Id. In this case, no reasonable person could infer from the pleading that the state "encouraged" or "coerced" the Facebook defendants to enable users to delete posts or to "look away" if and when they do.

Similarly, there is nothing in the pleading to suggest that Fehrenbach can satisfy the "public function test" exception. "Under the public function test, 'the exercise by a private entity of powers traditionally exclusively reserved to the [s]tate' can constitute 'state action."' *Id* (quoting *Jacks-on v. Metro. Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). However, the range of activities in which private actors have been held to be performing public functions is very limited. *See Island Online, Inc. v. Network Sols., Inc.,* 119 F. Supp. 2d 289, 305 (E.D.N.Y. 2000). Indeed, courts in this District have determined that "the Internet is, by no stretch of the imagination, a traditional and exclusive public function." *Id*. at 306. For

6

example, addressing a similar attempt to treat Facebook as a state actor, District Judge Donnelly noted:

> Facebook is a private corporation, and [the plaintiff] does not allege any facts that could support a claim of a "close nexus" between Face book and the state, such that Face book's actions (or inaction) may be fairly attributable to the state. *See Doe v. Cuomo,* No. 10 CV 1534, 2013 WL 1213174, at *9 (N.D.N. Y. Feb. 25, 2013) (finding that plaintiff failed to establish that Facebook acted under color of state law for the purposes of joining Facebook as a defendant); *Young v. Facebook, Inc.*, No. 5:10-cv-03579, 2010 WL 4269304, at *2 (N.D. Cal. Oct. 25, 2010) (finding that Plaintiffs§ 1983 action against Facebook failed because she "has not alleged any action under color of state law").

*Forbes v. Facebook, Inc.*, No. 16 CV 404 (AMD), 2016 WL 676396, at *2 (E.D.N.Y. Feb. 18, 2016). For the same reasons, Fehrenbach cannot establish that the Facebook defendants were state actors, and therefore, the undersigned recommends that the plaintiff's section 1983 claims against the Facebook defendants be dismissed.

### B. The Bivens's Claim

Nevertheless, Fehrenbach has attempted to frame his First Amendment claim against Facebook and Zuckerberg as a Bivens claim, which is the federal common law counterpart to a Section 1983 claim. As such, the Court must also address Fehrenbach's allegation that the Facebook defendants were acting as federal officials when they violated his constitutional rights.

"*In Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized that private citizens may bring suits for money damages against federal agents, in their individual capacities, for violations of their Constitutional rights." *Megna v. Food & Drug Admin.,* No. 08-CV-1435 JFB WDW, 2009 WL

7

749900, at *6-7 (E.D.N.Y. Mar. 17, 2009), aff'd sub nom. Megna ex rel. Megna v. Food & Drug Admin., 377 F. App'x 113 (2d Cir. 2010)(citing *Bivens*, 403 U.S. 388 at 397). "Because *Bivens* is the creation of federal common law, its application has been limited." *Espinoza v. Zenk*, No. 10-CV-427 MKB, 2013 WL 1232208, at *7 (E.D.N.Y. Mar. 27, 2013). Specifically, in order to establish a *Bivens* claim, a plaintiff must establish that a defendant acted under the color of federal law to deprive plaintiff of a constitutional right. *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)). In this case, Fehrenbach has not done so.

To begin with, read liberally, the *Bivens* claim asserted against both Facebook and Zuckerberg must fail as a matter of law. Fehrenbach has clearly indicated that the Facebook defendants are being sued in their "official capacities." As the Second Circuit stated in *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994):

> In a *Bivens* action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action. Such an action, however, must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.

*Robinson*, 21 F.3d at 510 (internal citations omitted). Moreover, the Supreme Court has refused to extend *Bivens* to lawsuits against private corporations. *La Ford v. Geo Grp., Inc.*, No. 13 CIV. 1978 BMC, 2013 WL 2249253, at *2 (E.D.N.Y. May 22, 2013) (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 63, 122 S.Ct. 515, 517, 151 L.Ed.2d 456 (2001)).

Finally, to the extent Fehrenbach is seeking to assert a First Amendment claim against Zuckerberg as an employee of Face book, there is simply nothing is the record to suggest that Zuckerberg was acting under the color of federal authority. At best, Fehrenbach takes issue with the fact that Zuckerberg and Facebook have not developed better means to prevent users from hiding messages from view by others. Pl.'s Mem. at 3. Fehrenbach argues, in this regard, that "I don't think there could be a greater threat to our constitutional republic than providing a platform and management tools that grant full unaccountable control of content to the government and/or government officials." Pl.'s Mem at 3. He also argue that Facebook should provide people who have posted comments with a notification that their messages are being hidden from view. Id Finally, in his opposition papers, Fehrenbach points to the fact that one of Zeldin's staff members suggested that he contact Facebook for technical assistance as evidence of the relationship between the Face book defendants and government officials. *Id* at 8. These allegations certainly falls short of the type of evidence that would establish that the Facebook defendants were acting as federal agents.

In sum, although Fehrenbach does not allege that the Facebook defendants were even aware of the fact that Zeldin and his staff removed the postings, he would nonetheless like the Face book defendants to "bare some level of responsibility for [the] abuses perpetrated by government officials." *Id*. at 7. However, there is nothing in the complaint to suggest that the Facebook defendants took any action on the government's behalf. Accordingly, the undersigned also recommends that the plaintiffs complaint be dismissed to the extent he seeks

to assert a Bines claim against the Facebook defendants.

### C. The Communication Decency Act

Finally, it's worth mention that the plaintiff's claims must also be dismissed under the Communications Decency Act ("CDA"). Section 230(c)(2) of the CDA provides:

> No account provider or user of an interactive computer service shall be held liable on account of--
> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph(1).

47 U.S.C.A. § 230 (West). While the Second Circuit has not considered whether social media platforms are "interactive computer services " within the meaning of the statute, Judge Cogan did note in *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017), that "other courts have readily concluded that ... Facebook in particular ... fall[s] into this category." 252 F. Supp. 156, n.10.   Zuckerberg also "qualifies for protection because he is a 'provider' of Facebook's interactive computer service."   *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014).

Moreover, the actions to which Fehrenbach objects fall squarely within the statute. The complaint charges the Facebook defendants with enabling users to restrict access to material. Compl. 6.   In fact, Fehrenbach's opposition papers make clear that "[t]he complaint against Mr.

10

Mark Zuckerberg and Facebook is that they created a platform and provided tools on that platform which enabled Representative Lee Zeldin, Mr. Lee Zeldin's Staff and IT Staff the ability to hide Mr. Charles Fehrenbach's Comments...." Pl.'s Mem at 2.  In other words, Fehrenbach seeks to hold the Facebook defendants accountable for their role in making that service available. Consequently, Section 230(c)(2)(B) of the CDA also immunizes the Facebook Defendants from liability.

### C.  Leave to Replead

Although the Court is mindful of the Second Circuit's instruction that "a district court should not dismiss a *pro se* complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated,'" *see Hernandez v. Sposato*, No. 14-CV-459 3, 2015 WL 4097784, at *5 (E.D.N.Y. July 8, 2015) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (quotation omitted)), nothing in the papers before the undersigned suggest that a valid claim may be stated against Zuckerberg or Facebook. Accordingly, the undersigned does not recommends that Fehrenbach be given an opportunity to amend in order to address the pleading deficiencies.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se*.  Any requests for an extension

of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).  Counsel for defendants is directed to serve a copy of this report upon the plaintiff and file proof of service on ECF.

Dated:   Central Islip, New York  
        August 6, 2018

**SO ORDERED:**

_____/s_____  
ARLENE R. LINDSAY  
United States Magistrate Judge