UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHARLES A. FEHRENBACH,

                Plaintiff,

       -against-

MR. LEE ZELDIN, MR. KEVIN AND MRS.
MAUREEN DOWLING, MR. MARK ZUCKERBERG
*Facebook*, JOHN AND JANE DOE, *Zeldin's IT Support Staff and Staff* and FACEBOOK, INC.,

                Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 17-5282 (JFB)(ARL)

**LINDSAY, Magistrate Judge:**

      Before the Court, on referral from District Judge Bianco, is the motion of the defendants, Congressman Lee Zeldin ("Congressman Zeldin") and Kevin Dowling ("Dowling") (collectively, "the Congressional defendants"), to dismiss the complaint filed by the *pro se* plaintiff, Charles A. Fehrenbach ("Fehrenbach"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Fehrenbach alleges that Congressman Zeldin, Dowling, Maureen Dowling,[1] Mark Zuckerberg, Facebook, Inc. and Zeldin's unnamed Staff and IT Support Staff, violated his constitutional rights when Zeldin and/or his staff deleted two comments made by Fehrenbach on social media - one on Congressman Zeldin's official Facebook page and one on his campaign Facebook page. Fehrenbach contends that "blocking," "filtering," and/or preventing his posts "from being visible by others who access Facebook," violated of his First

---

[1] Fehrenbach named Maureen Dowling as a defendant because he believed that she was a member of Congressman Zeldin's staff. According to the Congressional defendants, Ms. Dowling is not now, and has never been, an employee of the Congressman's office. Further, despite their common last name, Ms. Dowling is not related to Kevin Dowling. ECF No. 24. Fehrenbach attempted service on Ms. Dowling by delivering and mailing a copy of the summons and complaint to Congressman Zeldin's office in Patchogue. However, by March 1, 2018, Fehrenbach acknowledged that the misassumption that he made with respect to "Maureen Dowling a/k/a Maura Dowling a/k/a Sara Noble." Given that fact that Ms. Dowling was misidentified and not properly served by Fehrenbach, the undersigned recommends that the claims against her be dismissed.

1

Amendment rights. Compl. 4, 5.[2] For the reasons set forth below, the undersigned respectfully recommends that the motion be granted.

## BACKGROUND

### A. Factual Averments

The facts underlying this action were previously set forth in the undersigned's August 6, 2018 Report and Recommendation. *Fehrenbach v. Zeldin*, No. 17 CV 5282 JFB ARL, 2018 WL 4242452, at *1 (E.D.N.Y. Aug. 6, 2018), report and recommendation adopted, No. 17 CV 5282 JFB ARL, 2018 WL 4242453 (E.D.N.Y. Sept. 5, 2018). Although the parties' familiarity with the facts is assumed, for ease of reference, the Court will repeat the relevant facts in this report.[3]

Zeldin is a U.S. Representative for the First Congressional District of New York. Defs.' Mem. at 1. Dowling is Zeldin's Legislative Director. *Id.* Zeldin maintains a Facebook page in his official capacity as a member of the House of Representatives, which allows Facebook users to post comments for view by others. *See* Amidon Decl. ¶ 2. When he was running for office, Zeldin's campaign organization also maintained a campaign Facebook page. *See id.* ¶¶ 2-3. Unlike the official Facebook page, Congressman Zeldin's campaign page is not supported by official government resources. *Id.*

On January 6, 2016, Fehrenbach posted the following comment on Zeldin's campaign Facebook page:

> Mr. Zeldin, Please provide the text from the Omnibus bill which caused the VISA confusion (as I requested in an email). I also suggest that you contact the "radio hosts" and request to be on there [*sic*] shows to help correct the

---

[2] Fehrenbach has not numbered the paragraphs in the complaint. Accordingly, the citations refer to page numbers.
[3] The facts are all drawn from the complaint, together with "documents incorporated in it by reference" and "document[s] upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). The facts are taken as true for purposes of deciding the instant motion.

2

record.

Compl. 5-8, App. A, E; *see* Amidon Decl. ¶ 4.   According to Fehrenbach, he posted the January 6 comment in response to Zeldin's inaccurate posting about the impact of the budget on the number of H2B visas.

At some point after the January 6 comment was posted, Fehrenbach logged onto his own Facebook account and was able to see his comment.[4] Compl. App C.   However, if he was not logged onto Facebook, he could not see the comment that he had posted.   *Id.* 5.   Fehrenbach believes that his post was deleted from public view by one of the defendants and argues that "[d]eleting the post because it was not part of the conversation is not accurate because the Omnibus bill being discussed did contain changes to the H2B visa program." *Id.*

Following the January 6 posting, Zeldin received the following comment from Maureen Dowling about a certain posting on his "LieZeldin"[5] Facebook page:

> Hi LieZeldin, l noticed that your recent post might go against Facebook's Community Standards about spam.   You may want to take the post down before someone reports it to Facebook.

*Id.* App. G.   When he received the message, Fehrenbach incorrectly assumed that the message had come from Dowling's wife.   *Id.* 5.   He responded:

> Mrs. Dowling:
>
> I read through Facebook's Community Standards prior to starting my page.   I don't believe there is anything that is not true on my page (unlike Mr. Zeldin's) therefore I don't believe Facebook will have a problem with it.
>
> If you are that concerned, please feel free to report my political page to Facebook.   If they have a problem and take it down, I will find another way to expose Mr. Zeldin's record.   The Independent Sentinel web site has had no

---

[4] Although Zeldin's IT staff allegedly deleted his August 6 posting, a member of Zeldin's staff did send Fehrenbach a comprehensive response to his questions about the H2B visa.   *See* Compl. App. H.

[5] LieZeldin is the name of Fehrenbach's Facebook page.   *See* Compl. 5, App. G.

3

> problem perpetuating inaccuracies about Mr. Zeldin's voting record (Ex-Im Bank). It's about time someone corrected the record (something Mr. Zeldin has not been willing to do).
>
> The last time I looked we still have freedom of speech.
>
> With all due respect
>
> Charles Fehrenbach

*Id.* App. G.

On August 28, 2017, Fehrenbach posted a second comment, but this time the posting was made on Congressman Zeldin's official Facebook page. Fehrenbach wrote "hurricanes are not the only thing that survives on hot air, Politicians do as well." *Id*. App. I. Fehrenbach alleges that the August 28 post was filtered by Zeldin, "the Dowlings" and Zeldin's IT support staff in violation of his First Amendment rights to free speech. *Id*. 5, 6. Fehrenbach asserts the defendants' actions were "stressful, demoralizing, disappointing and aggravating." *Id*. 6. Fehrenbach is seeking (i) $500,000 for emotional distress and $500,000 in punitive damages from Zeldin, (ii) $50,000 in unspecified damages from Mr. Dowling, (iii) restoration of the comments at issue and (iv) a public apology. *Id*. 6.

### B.   Procedural History

Fehrenbach filed the instant complaint on September 8, 2017. By January 25, 2018, the Congressional defendants had not responded to the complaint and Fehrenbach requested the entry of a certificate of default. However, after he filed the request for the certificate, the Court learned that Fehrenbach had attempted service on the Congressional defendants by delivering a copy of the summons and complaint to the Congressman's district office rather than serving the United States Attorney for the Eastern District of New York or the U.S. Attorney General as required by Rule 4(i) of the Federal Rules of Civil Procedure. See ECF No. 4. Accordingly,

the Court denied his request for a certificate of default and extended the plaintiff's time to service the Congressional defendants to March 16, 2018.

After the Congressional defendants had been properly served, counsel for the Congressional defendants attempted to "correct [Fehrenbach's] misimpressions about the status of his [posted] comments." ECF No. 31.[6] Specifically, counsel's letter began by explaining that there is a difference between Congressman Zeldin's two Facebook pages. As discussed in the body of this report, the difference is significant because the alleged modification to the Congressman's campaign page constitutes private action and, thus, lacks the "state action" necessary to support a First Amendment claim. Counsel further indicated that law clerks in the Office of General Counsel, using independent Facebook accounts not connected to Congressman Zeldin, his staff or his campaign, confirmed that neither of the posts had been hidden or moderated in any way and remained visible to the public. *See id.* Despite receipt of that letter, Fehrenbach refused to withdraw the instant complaint. On May 23, 2018, the Congressional defendants filed the motion now pending before the Court.

## DISCUSSION

**A.     Standing**

The Congressional defendants have moved to dismiss the complaint under both Rule 12(b)(1) and 12(b)(6). "'When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, . . . the Court must consider the Rule 12(b)(1) motion first.'" *Craig x. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)). "A case is properly dismissed for lack of subject

---

[6] Fehrenbach attached a copy of the counsel's letter to his March 26, 2018 filing.

5

matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)(citations and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider relevant documents that are extrinsic to the complaint. *See id.*

The Congressional defendants argue that the Court lacks subject matter jurisdiction because Fehrenbach has failed to demonstrate each of Article III's constitutional standing requirements. *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 137 (E.D.N.Y. 2016) ("Where, as here, the case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each of Article III's constitutional standing requirements.") (citations omitted). Article III limits the jurisdiction of federal courts to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2. To ensure that the case-or-controversy requirement is met, "courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (citing *Raines v. Byrd,* 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)).

"Article III standing consists of three 'irreducible' elements: (1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the

defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *Id.* "As a general rule, the "injury-in-fact" requirement means that a plaintiff must have personally suffered an injury." *Id.* In this case, Fehrenbach claims he did suffer an injury because he "happened to notice that his comments were not visible when he was not logged in to his Facebook account." Pl.'s Mem. at 2. He further asserts that he asked a co-worker to confirm that he could not see the comment. Fehrenbach attached an affidavit to his complaint from Robert Cubbage ("Cubbage"), a resident of Texas, who states "upon oath and affirmation of belief" that on some unidentified date he could not see the post made by Charles Fehrenbach when he logged into Facebook. *See* Compl. Notwithstanding his and Cubbage's difficulty finding the posts, a review undertaken by the Office of the General Counsel confirmed that the posts remained visible to date. *See* Amidon Decl. Exs. A, B. Indeed, Eric Amidon, Zeldin's Chief of Staff, has provided the Court with screen shots of both comments as they currently appear on Facebook to other users. Although the Court cannot state for certain why Fehrenbach thought the posts had been removed, Fehrenbach has indicated that he is a very casual and infrequent Facebook user. ECF No. 31. In his opposition paper, he also acknowledged that, at least with respect to Zeldin's official Facebook page, a login is required. Pl.'s Mem. at 2. Accordingly, a reasonable inference can be made that Fehrenbach is not suffering from any injury or threat of injury because his postings were never deleted and are currently viewable.

The Congressional defendants further argue that Fehrenbach lacks standing because there is nothing for this Court to redress. Although the Court will address the request for monetary damages below, it is important to note in this section of the report that Fehrenbach's request for

an apology is foreclosed by the First Amendment. *Burns v. Martuscello*, No. 15-1631, 2018 WL 2122377, at *4 (2d Cir. 2018) ("To force a person to speak, and compel participation, is a severe intrusion on the liberty and intellectual privacy of the individual."). In addition, because the comments remain viewable, there is nothing for the Court to abate. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 169, 120 S. Ct. 693, 698, 145 L. Ed. 2d 610 (2000) ("For a plaintiff who is injured or threatened with injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description."). Accordingly, Fehrenbach's request to have his comments restored does not satisfy the redressability requirement. For these reasons, the undersigned agrees that Fehrenbach lacks standing and recommends that the case be dismissed for lack of subject matter jurisdiction.

**B.     Failure to State a Claim**

Moreover, even if the Court could exercise jurisdiction, dismissal of the complaint would be appropriate because Fehrenbach's First Amendment claim is not facially plausible. The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the Court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

8

draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted).

Where, as here, the complaint was filed *pro se*, the Court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). However, a *pro se* complaint must state a plausible claim for relief, *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and mere conclusions of law unsupported by factual averments need not be accepted, *Klos v. Bligh*, No. 13-CV-5449, 2014 WL 3778993, at *5 (E.D.N.Y. July 31, 2014).

In this case, Fehrenbach cannot prevail on his First Amendment claim. In order to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution or the laws of the United States, and (2) that the deprivation was "committed by a person acting under the color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). "'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.'" *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass' n*, 396 F.3d 178, 186 (2d Cir. 2005)). Fehrenbach's January posting was made to Congressman Zeldin's campaign page, and thus, the conduct surrounding the alleged removal of the January 6 post amounts to private action. *See Rodriguez v. Winski*, 973 F. Supp. 2d 411, 419 (S.D.N.Y. 2013) ("It is axiomatic that the First Amendment protects the rights to speak, publish, and

9

assemble against abridgement *only by the government*.") (emphasis added).

To the extent that Fehrenbach's First Amendment complaint is based on the alleged removal of his August 28 posting, Fehrenbach's claim is also flawed. Although the August 28 comment was posted on Congressman Zeldin's official Facebook page, generally there is no statutory cause of action against federal officials." *Zherka v. Ryan*, 52 F. Supp. 3d 571, 578 (S.D.N.Y. 2014). However, a plaintiff may bring a suit for money damages against federal agents, in their individual capacities, for violations of their Constitutional rights." *Megna v. Food & Drug Admin.,* No. 08-CV-1435 JFB WDW, 2009 WL 749900, at *6-7 (E.D.N.Y. Mar. 17, 2009), aff'd sub nom. *Megna ex rel. Megna v. Food & Drug Admin.*, 377 F. App'x 113 (2d Cir. 2010) (citing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)). But the application of *Bivens* is limited because it is a creation of federal common law. *Espinoza v. Zenk*, No. 10-CV-427 MKB, 2013 WL 1232208, at *7 (E.D.N.Y. Mar. 27, 2013).

In this case, Fehrenbach has asserted claims against Congressman Zeldin and Dowling in both their official and individual capacities, see ECF No, 1. As stated above, the Court lacks jurisdiction to hear the official capacity claims. *See Farmer v. Fed. Bureau of Prisons*, 13-CV-1255 (DLI)(CLP), 2015 U.S. Dist. LEXIS 39534, 2015 WL 1439871 (E.D.N.Y. Mar. 27, 2015) (where a Bivens action is filed against employees of the United States in their official capacities, the court lacks jurisdiction to hear the claim and the action must be dismissed); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Under the doctrine of sovereign immunity, an action for damages will not lie against [federal officers] absent consent."); *Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir. 2001) (no jurisdiction over

10

claims against Congress because, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). As the Second Circuit noted in *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994):

> In a *Bivens* action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action. Such an action, however, must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.

*Robinson*, 21 F.3d at 510 (internal citations omitted).

Moreover, "the Second Circuit has not recognized a *Bivens* action sounding in the First Amendment." *Zherka*, 52 F. Supp. 3d at 579 (citing *Zielinski v. DeFreest*, 12 CIV. 1160 JPO, 2013 WL 4838833, at *9 (S.D.N.Y. Sept. 10, 2013)). Indeed, in *Hudson Valley Black Press v. I.R.S.*, 409 F.3d 106, 107 (2d Cir. 2005), the Second Circuit considered whether to allow a First Amendment cause of action against IRS officials who audited a newspaper publisher. The Court declined to do so stating "today we join our sister circuits and hold that *Bivens* relief is not available to taxpayers who allege First Amendment violations based on retaliatory tax audits." *Id.* (citing *Hudson Valley Black Press,* 409 F.3d at 113). Similarly, *Turkmen v. Hasty*, 789 F.3d 218, 236 (2d Cir. 2015), judgment rev'd in part, vacated in part sub nom. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017), the Second Circuit declined to allow a free exercise claim to go forward against federal officers under *Bivens*. Accordingly, to the extent Fehrenbach has asserted a First Amendment claim against Congressman Zeldin and Dowling in their individual capacities, that claim also lack merit.

Finally, Fehrenbach's bald assertion that Congressman Zeldin and Dowling are responsible for his inability to view the August 28 comment is far from enough to support a First Amendment claim even if the claim was viable. At best, Fehrenbach's allegations support a finding that Congressman Zeldin's official Facebook page required a user to first log into a Facebook account before gaining access to all the posted comments. As the defendants have correctly noted, the First Amendment did not entitle Fehrenbach to have his comment posted on Congressman Zeldin's official Facebook page disseminated to a wider audience. *See, e.g., Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984) ("The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy.").[7] Accordingly, for the reasons stated above, the undersigned respectfully recommends that the Congressional defendants' motion be granted, and the case be dismissed.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se*. Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996). Counsel for defendants is directed to serve a copy of this report upon the plaintiff and

---

[7] Given the undersigned's findings, the Court need not address the defendants' qualified immunity arguments.

file proof of service on ECF.

Dated:  Central Islip, New York  
        February 6, 2019

**SO ORDERED:**

_____/s_____  
ARLENE R. LINDSAY  
United States Magistrate Judge